1  XAVIER BECERRA
   Attorney General of California
2  EDWARD OCHOA
   Supervising Deputy Attorney General
3  OLIVIA KARLIN
   State Bar No. 150432
4  JOHN W. EVERETT
   Deputy Attorneys General
5  State Bar No. 259481
     600 West Broadway, Suite 1800
6    San Diego, CA 92101
     P.O. Box 85266
7    San Diego, CA 92186-5266
     Telephone: (619) 738-9305
8    Fax: (619) 645-2271
     E-mail: John.Everett@doj.ca.gov

9
10 *Attorneys for Plaintiff Department of Toxic
   Substances Control*

11              IN THE UNITED STATES DISTRICT COURT

12            FOR THE CENTRAL DISTRICT OF CALIFORNIA

13

| 14 **CALIFORNIA DEPARTMENT OF** | Case No.: 2:16-cv-09308-GW-E |
|---|---|
| **TOXIC SUBSTANCES CONTROL,** | |
| 15 | [~~PROPOSED~~] CONSENT DECREE |
| Plaintiff, | BETWEEN PLAINTIFF AND |
| 16 | DEFENDANT PORCELAIN METALS |
| | CORPORATION; EXHIBIT |
| 17 v. | |
| 18 **PORCELAIN METALS** | |
| **CORPORATION, a dissolved** | |
| 19 **Kentucky corporation,** | |
| 20 Defendant. | |

21

22

23 **I.    INTRODUCTION**

24          1.   Plaintiff the California Department of Toxic Substances Control

25 ("DTSC" [1] or "PLAINTIFF") filed a Complaint in this matter pursuant to the

26 Comprehensive Environmental Response, Compensation, and Liability Act

27 _____

28 [1] Please refer to section V, below, for the list of defined terms.

("CERCLA"), 42 U.S.C. § 9601 et seq. against Defendant Porcelain Metals Corporation ("PORCELAIN METALS"). In the Complaint, PLAINTIFF seeks to recover its response costs under CERCLA section 107(a), 42 U.S.C. § 9607(a) ("RESPONSE COSTS"), related to releases and threatened releases of hazardous substances at and emanating from the properties located at 6904 East Slauson Avenue, City of Commerce, County of Los Angeles, California, identified by Assessor's Parcel Number (APN) 6356-017-028 ("LOT 2" or the "PROPERTY"), and 6840 East Slauson Avenue, identified by APN 6356-017-027 ("LOT 1"). LOT 1, LOT 2, and the areal extent of contamination at and emanating from those lots is collectively the "SITE." Additionally, PLAINTIFF seeks declaratory relief under CERCLA section 113(g)(2), 42 U.S.C. § 9613(g)(2) that PORCELAIN METALS is jointly and severally liable for future response costs to be incurred by PLAINTIFF to address releases and threatened releases of hazardous substances at the SITE.

## II. STATEMENT OF RELEVANT FACTS

2. PORCELAIN METALS is an administratively dissolved Kentucky corporation whose powers, rights, and privileges are forfeited in California and in Kentucky, except as necessary to wind up and liquidate its business and affairs. PORCELAIN METALS' powers, rights, and privileges to wind up and liquidate its business and affairs in California will, upon revivor, include the right to sell the PROPERTY.

3. PORCELAIN METALS is the current owner of the PROPERTY (LOT 2).

4. From the 1940s until 1990, the California Metal Enameling Company ("CAMEO") engaged in the manufacturing of porcelain-enameled coated products on LOTS 1 and 2, and PLAINTIFF has alleged in the Complaint that those operations resulted in the release of hazardous substances into the soil and groundwater.

5. Kenfield Corporation acquired LOTS 1 and 2 in 1952, and merged into CAMEO in 1984. CAMEO became the owner of LOTS 1 and 2 as the corporate successor by merger to Kenfield Corporation.

6. CAMEO merged into PORCELAIN METALS in 1990.

7. Through its merger with CAMEO, PORCELAIN METALS became the owner of LOTS 1 and 2 and the owner and operator of the porcelain-enameling facility. While record title to the PROPERTY remains in the name of Kenfield Corporation, PORCELAIN METALS is the owner of the PROPERTY as successor by merger to Kenfield Corporation and CAMEO. PORCELAIN METALS has alleged that it has received significant expressions of interest from potential purchasers of Lot 2.

8. Materials known to have been used in the manufacture of porcelain-enameled metal products at LOTS 1 and 2 include, but are not limited to: chromic acid, alkaline potassium solutions, sulfuric acid, sulfates, potassium dichromate, lead, zinc, cadmium, and nickel.

9. In or around June 1992, in connection with termination of its business in California, PORCELAIN METALS hired National Environmental Consultants, Inc. ("NECI") to manage cleanup and demolition activities at the SITE. Demolition of all structures at the SITE was completed in December 1992.

10. Prior to demolition, NECI found hazardous concentrations of chromium, lead, cadmium, nickel, and zinc in waste samples collected from the surfaces of machinery, and in trenches and pits at the SITE, among other places. Concrete sampling showed that chromium had been absorbed in the concrete at the "Pit 2" area of the SITE.

11. In 1993, PORCELAIN METALS retained NECI to perform a phase II environmental investigation to investigate contamination underneath certain areas of LOTS 1 and 2, identify any chemicals of concern, and define the vertical and lateral migration of any chemicals of concern underneath LOTS 1 and 2. NECI

1    found that the soil in portions of the SITE was contaminated with hexavalent

2    chromium, which had migrated vertically and laterally to an extent that was

3    estimated by NECI.

4        12. DTSC began oversight of the investigation and cleanup at the SITE

5    pursuant to a voluntary cleanup agreement with PORCELAIN METALS executed

6    in July 1995.

7        13. Pursuant to the voluntary cleanup agreement, PORCELAIN METALS

8    conducted investigation and/or cleanup activities at the SITE.  DTSC issued a no

9    further action letter for LOT 1 in 2001.  PORCELAIN METALS sold LOT 1 that

10   same year, and the new owner subsequently redeveloped LOT 1.  PORCELAIN

11   METALS ceased investigation and cleanup activities at LOT 2 shortly after the sale

12   of LOT 1.  PORCELAIN METALS alleges that it was financially unable to

13   continue the work on LOT 2.

14       14. In April 2006, DTSC terminated the cleanup agreement because

15   PORCELAIN METALS had ceased investigation and cleanup activities, and DTSC

16   determined that a threat to human health and the environment existed as a result of

17   hexavalent chromium and other hazardous substances in the groundwater and soil.

18       15. In June 2006, DTSC issued Imminent and Substantial Endangerment

19   Determination and Order, and Remedial Action Order, Docket No. IS&E 05/06 –

20   015 ("IS/E Order") naming PORCELAIN METALS as a respondent.  The IS/E

21   Order required PORCELAIN METALS to implement removal actions, complete a

22   remedial investigation/feasibility study, prepare a remedial action plan or removal

23   action workplan, and comply with related legal requirements.

24       16. In 2007, DTSC determined that PORCELAIN METALS was out of

25   compliance with the IS/E Order because of the ongoing presence of hazardous

26   substances at the LOT 2 SITE, including hexavalent chromium in groundwater at

27   concentrations exceeding the drinking water maximum contaminant level ("MCL").

28

17. DTSC determined that additional investigation and other response actions, including long term groundwater monitoring, would be required at the LOT 2 SITE to address the release and threatened release of hexavalent chromium and other hazardous substances migrating through the soil and groundwater.

18. In 2007, DTSC prepared a time critical removal action workplan to address the removal of soil contaminated with chromium and hexavalent chromium. In 2008, DTSC revised that removal action workplan and implemented it through a contract with URS Corporation.

19. PORCELAIN METALS alleges that it also went out of business in Kentucky, and its operations and facilities there were closed and liquidated. The former owner of PORCELAIN METALS, John H. McBride, died in 2011. The person now with corporate authority to act on behalf of PORCELAIN METALS is Carolyn M. McBride, who is the widow of Mr. McBride and the Sole Officer and Registered Agent of PORCELAIN METALS in Kentucky. PORCELAIN METALS was administratively dissolved by the Kentucky Secretary of State in 2015 because it failed to file an annual report.

20. From 2010 through 2015, DTSC conducted extensive soil and groundwater investigations at the LOT 2 SITE to further identify areas of environmental concern. DTSC completed a series of removal actions to remove hazardous substances that posed a threat to human health and the environment.

21. DTSC excavated soils contaminated with hazardous substances that posed a threat to groundwater, including, but not limited to, chromium, hexavalent chromium, cadmium, lead, and arsenic. These activities have lowered concentrations of hazardous chemicals, removed contaminated soils, and significantly reduced or mitigated impacts to groundwater.

22. A water production well, "Commerce 3D," was constructed in 1946 at 5960 Garfield Avenue, City of Commerce (APN 6356-017-900), which is adjacent to the southerly lot line of LOT 2. The well parcel was formerly owned by Park

Water Company and was conveyed to the City of Commerce in 1978. The well was used for drinking water purposes until it was removed from service in 2001, when levels of chromium, hexavalent chromium, and volatile organic compounds ("VOCs") were detected in well water samples. DTSC coordinated with the City of Commerce to remove the well from service to reduce the risk of human exposure and reduce the need for groundwater remediation.

23. DTSC has incurred, and expects to continue to incur, costs of "response," as that term is defined in CERCLA section 101(25), 42 U.S.C. § 9601(25), in taking actions at or related to the contamination at the SITE. The response actions include, but are not limited to, the following activities:

    a. Sampling and analysis;

    b. Performing inspections and preparing reports;

    c. Reviewing work plans for investigation and remediation;

    d. Conducting SITE visits and overseeing field work;

    e. Meeting with the potentially responsible party(ies);

    f. Complying with the California Environmental Quality Act; and

    g. Preparing decision documents regarding SITE cleanup and monitoring and implementing additional response actions concerning the SITE.

24. PLAINTIFF's response actions were required to remove the hazardous substances released and threatened to be released at the SITE. DTSC's response actions were not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300.

25. As of March 2018, PLAINTIFF's unreimbursed RESPONSE COSTS related to the SITE exceeded $3.5 million. PLAINTIFF will continue to incur RESPONSE COSTS related to the LOT 2 SITE.

26. On November 23, 2016, DTSC recorded a statutory lien in the amount of $2,925,211.32 on the PROPERTY in the Los Angeles County Recorder's Office.

27. PORCELAIN METALS has failed to pay property taxes to the Los Angeles County Tax Collector. The amount owed to the Tax Collector amounted to $137,107.71 as of August 31, 2018. The Tax Collector scheduled a closed bid auction to sell the PROPERTY for tax arrearage on May 31, 2018, but that sale was taken off calendar due to the pendency of this settlement and Consent Decree.

28. PORCELAIN METALS' corporate status in California has been forfeited by the Franchise Tax Board ("FTB"), and PORCELAIN METALS shall pay the taxes and penalties assessed by the FTB and anticipates receiving a certificate of good standing within six to eight weeks of the lodging of this Consent Decree.

29. PORCELAIN METALS has been administratively dissolved in Kentucky.

30. PORCELAIN METALS has alleged that its only assets are the PROPERTY and general liability insurance policies, and that it now seeks to settle this action on the terms set forth herein. By signing this Consent Decree, PORCELAIN METALS affirms under penalty of perjury that the financial information provided to DTSC is true and correct. In making this determination of PORCELAIN METALS' finances and in entering into this settlement, DTSC has relied on the financial information provided by PORCELAIN METALS.

31. PLAINTIFF and PORCELAIN METALS ("the PARTIES") agree, and this Court, by entering this Consent Decree, finds, that: this Consent Decree has been negotiated by the PARTIES in good faith; settlement of this matter will avoid expensive, prolonged, and complicated litigation between the PARTIES; and this Consent Decree is fair, reasonable, in the public interest, and consistent with the purpose of CERCLA.

**THEREFORE**, the Court, with the consent of the PARTIES to this Consent Decree, hereby **ORDERS, ADJUDGES, AND DECREES**, as follows:

/ / /

/ / /

### III. JURISDICTION

32. The Court has subject matter jurisdiction over the matters alleged in this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367(a), and CERCLA section 113(b), 42 U.S.C. § 9613(b), and personal jurisdiction over each of the PARTIES. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b) and CERCLA section 113(b), 42 U.S.C. § 9613(b). Solely for the purposes of this Consent Decree and the underlying Complaint, PORCELAIN METALS waives all objections and defenses that PORCELAIN METALS may have to the jurisdiction of the Court or to venue in this district.

33. PORCELAIN METALS consents to, and shall not challenge, the terms of this Consent Decree and this Court's jurisdiction to enter and enforce this Consent Decree.

34. The Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree, if necessary.

### IV. SETTLEMENT OF DISPUTED CLAIMS

35. This Consent Decree resolves PLAINTIFF's claims against PORCELAIN METALS in the above-captioned action. PLAINTIFF agrees to settlement of PORCELAIN METALS' liability in this action in exchange for consideration from PORCELAIN METALS, including payment by PORCELAIN METALS to reimburse a portion of PLAINTIFF's RESPONSE COSTS incurred and to be incurred at, or in connection with, releases and threatened releases of hazardous substances at the SITE. THE PARTIES' mutual releases of liability and the consideration for those releases are set forth herein in detail below.

36. Except as set forth in Paragraphs 19 and 26-30 above, nothing in this Consent Decree shall be construed as an admission by PORCELAIN METALS of any issue of fact. Nothing in this Consent Decree shall be construed as an admission by PORCELAIN METALS of any issue of law or any violation of law.

37. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the PARTIES under Fed. R. Civ. P. 54 and 58.

## V. DEFINITIONS

38. Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA, or in regulations promulgated under CERCLA, shall have the meaning assigned to them therein. Whenever terms listed below are used in this Consent Decree, the definitions below shall apply.

39. "DAY" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or State holiday, the period shall run until the close of business of the next day that is not a Saturday, Sunday, or federal or State holiday.

40. "DTSC" shall mean the California Department of Toxic Substances Control, and its predecessors and successors. DTSC is a public agency of the State of California organized and existing under and pursuant to California Health and Safety Code § 58000 et seq. Under California law, DTSC is the state agency responsible for determining whether there has been a release and/or threatened release of hazardous substances into the environment, and for determining the actions to be taken in response thereto.

41. "EFFECTIVE DATE" shall mean the date the Court enters an Order approving this Consent Decree.

42. "FAIR MARKET VALUE" shall mean the highest price on the date of valuation that would be agreed to by a seller, being willing to sell but under no particular or urgent necessity for so doing, nor obliged to sell, and a buyer, being ready, willing, and able to buy but under no particular necessity for so doing, each dealing with the other with full knowledge of all the uses and purposes for which the property is reasonably adaptable and available.

43. "FEDERAL INSURANCE COMPANY" shall mean Federal Insurance Company (in its capacity as the insurer of PORCELAIN METALS at the SITE) and its parents, managers, managing agents, representatives, affiliates, successors, predecessors, heirs, legatees, and assigns.

44. "LOT 2 SITE" shall mean the property located at 6904 East Slauson Avenue, City of Commerce, County of Los Angeles, California, identified by Assessor's Parcel Number (APN) 6356-017-028 ("LOT 2" or the "PROPERTY"), and the areal extent of contamination at and emanating from that lot, including contamination in the soil or groundwater.

45. "NET SALE PROCEEDS" shall mean the gross sale price of the PROPERTY, less commercially reasonable brokerage commissions, closing costs, and marketing expenses.

46. "PARTIES" shall mean PLAINTIFF and PORCELAIN METALS, and the term "PARTY" shall refer to either PLAINTIFF or PORCELAIN METALS.

47. "PLAINTIFF" shall mean DTSC.

48. "PROPERTY" shall mean the real property owned by PORCELAIN METALS, located as 6904 East Slauson Avenue, City of Commerce, County of Los Angeles, California, identified by Assessor's Parcel Number (APN) 6356-017-028, and referred to as LOT 2.

49. "RESPONSE COSTS" shall mean all costs of "removal," "remedial action," or "response" as those terms are defined by CERCLA § 101, 42 U.S.C. § 9601, related to the disposal, release, and/or threatened release of hazardous substances related to the SITE, including into soil and groundwater.

50. "SITE" shall mean the properties located at 6904 East Slauson Avenue, City of Commerce, County of Los Angeles, California, identified by Assessor's Parcel Number (APN) 6356-017-028 ("LOT 2" or the "PROPERTY"); and 6840 East Slauson Avenue, identified by APN 63560-017-027 ("LOT 1") and the areal

extent of contamination at and emanating from those lots, including contamination in the soil or groundwater.

## VI.    PORCELAIN METALS' SETTLEMENT OBLIGATIONS

51. PORCELAIN METALS shall pay to DTSC within sixty (60) DAYS of the EFFECTIVE DATE an amount equal to $1,865,258.61, the source of which will be insurance proceeds from a settlement to be entered into between PORCELAIN METALS and its insurer, Federal Insurance Company, prior to the EFFECTIVE DATE.

52. $50,000 of the payment described in Paragraph 51 above shall be retained by PORCELAIN METALS for the sole purposes of paying current and future real property taxes assessed by the Los Angeles County Tax Collector to PORCELAIN METALS for the period from July 1, 2018 to June 30, 2019 and continuing up to the date of the closing of the sale of the PROPERTY.  After the sale of the PROPERTY, any remaining balance from the retained $50,000 shall be paid to DTSC.

53. PORCELAIN METALS shall pay to the Los Angeles County Tax Collector prior to or within thirty (30) DAYS of the EFFECTIVE DATE the amount needed to satisfy due and unpaid real property taxes on the PROPERTY through June 30, 2018 (the "Catch-Up Property Tax Payment").  The Catch-Up Property Tax Payment is presently estimated to be an amount equal to $137,107.71 plus a $1,183.16 penalty for each month that past due real property taxes remain unpaid after August 31, 2018.

54. PORCELAIN METALS shall pay DTSC the NET SALE PROCEEDS for the sale of the PROPERTY, as set forth in Paragraph 56 below.

55.   Revival of PORCELAIN METALS:

     a. PORCELAIN METALS shall, prior to or within ninety (90) DAYS of the EFFECTIVE DATE:

i.   Pay, or cause to be paid to the FTB, all delinquent balances, including penalties, fees, and interest;

ii.   Take such additional steps as may be required by the FTB to revive itself, including, but not limited to: (1) filing all delinquent tax returns; (2) submitting a revivor request form; and

iii.   Taking any other steps necessary to return to, or maintain, "good standing" with the California Secretary of State and the FTB sufficient to allow PORCELAIN METALS to sell real property in California.

56. Sale of the PROPERTY:

   a.  Until the PROPERTY is sold for FAIR MARKET VALUE, PORCELAIN METALS shall use commercially reasonable efforts to sell the PROPERTY for FAIR MARKET VALUE and shall incur only commercially reasonable costs of sale for the sale of the PROPERTY.

   b.  Prior to entering into or modifying (i) any listing agreement for the PROPERTY, or (ii) any purchase and sale agreement for the PROPERTY (regardless of whether procured by a broker under a listing agreement), PORCELAIN METALS shall provide DTSC a copy of the proposed agreement. Within fifteen (15) DAYS of receipt of the agreement, DTSC may approve the agreement or object to it on the grounds that: (1) any costs or commissions to be deducted from the gross sale price pursuant to the agreement or other terms and conditions are not commercially reasonable; or (2) that the agreement does not provide for FAIR MARKET VALUE. DTSC must state with specificity the basis of any objection. PORCELAIN METALS may proceed to enter into the

agreement if no objection is timely received.  If such an objection is made, the PARTIES will promptly confer to determine if the objection can be satisfactorily resolved.  If resolved, PORCELAIN METALS may proceed to enter into the agreement consistent with the resolution.  PORCELAIN METALS may not enter into the agreement until DTSC has withdrawn its objection, the objection has been resolved between the PARTIES, or the dispute has been resolved by this Court upon a noticed motion by either PARTY.

c. For purposes of this Consent Decree, PORCELAIN METALS shall be deemed to have made commercially reasonable efforts to sell the PROPERTY if it does both of the following: 1) lists the PROPERTY for sale with a licensed commercial real estate broker at FAIR MARKET VALUE within twenty-one (21) DAYS of the later of (i) the EFFECTIVE DATE, or (ii) the date that PORCELAIN METALS may enter into a listing agreement pursuant to subparagraph (b) of this Paragraph; and 2) enters into a purchase and sale agreement promptly following approval of such an agreement by DTSC, or following resolution of a dispute regarding such an agreement by this Court under subparagraph (b) of this Paragraph.

d. PORCELAIN METALS shall be obligated to submit to DTSC for approval any unconditional bona fide offer to purchase the PROPERTY in as-is condition, and without representations or warranties, for FAIR MARKET VALUE.

e. In view of the environmentally impaired condition of the PROPERTY, PLAINTIFF will timely respond to inquiries from any interested purchasers regarding the possibility of a

prospective purchaser agreement or other limitation on liability. PLAINTIFF and PORCELAIN METALS agree and acknowledge that the FAIR MARKET VALUE of the PROPERTY may be affected by, among other things, the environmental condition of the PROPERTY and the potential environmental liability of an interested purchaser.

f. Any purchase agreement and escrow instructions for the sale of the PROPERTY shall require the escrow agent to pay DTSC all of the NET SALE PROCEEDS.

g. Any purchase agreement shall require the purchaser, after closing of the purchase, to execute and to record, within thirty (30) DAYS of request by DTSC, a Land Use Covenant approved by DTSC, if the remedy selected for the PROPERTY in an approved final Remedial Action Plan or Removal Action Plan approved by DTSC requires the recording of a Land Use Covenant.

h. Any purchase and sale agreement shall require the purchaser to allow DTSC access to the PROPERTY to perform response actions.

i. Within ten (10) DAYS of opening escrow to sell the PROPERTY, PORCELAIN METALS shall notify DTSC in writing and shall provide DTSC with a copy of the agreement to sell the PROPERTY and escrow agreement. As early as possible after opening escrow, PORCELAIN METALS shall request a preliminary Seller's Estimated Settlement Statement from the escrow agent and provide that statement to DTSC.

j. DTSC presently has a statutory lien on the PROPERTY, recorded as instrument number 20161476375 in the Los Angeles County Recorder's Office, a copy of which is attached to this Consent

Decree as Exhibit A. PORCELAIN METALS agrees not to contest the lien on the PROPERTY. Unless DTSC has objected to the sale in accordance with subparagraph (b) of this Paragraph and the objection remains unresolved between the PARTIES or by the Court, on or before the DAY appointed for the close of escrow, DTSC will execute and provide to the escrow agent a release of the lien (in form and substance acceptable for issuance of title insurance without exclusion for the lien), which the escrow agent shall record with the County Recorder at closing.

k.  Within three (3) DAYS of escrow closing, the escrow agent shall pay DTSC the funds specified in subparagraph (f) of this Paragraph.

l.  Within ten (10) DAYS of the close of escrow, PORCELAIN METALS or the escrow agent shall provide a copy of the Seller's Final Settlement Statement showing the gross sale price, and each item deducted from same in calculating the NET SALE PROCEEDS remitted to DTSC.

m. PORCELAIN METALS may, upon thirty (30) DAYS notice to DTSC, and if DTSC does not object within that 30 DAY period, execute and record a termination of the existing recorded Remediation Easement Agreement in favor of PORCELAIN METALS with respect to LOT 1.

n.  Prior to the close of escrow, PORCELAIN METALS or the escrow agent shall provide to DTSC a copy of the Seller's Estimated Settlement Statement together with all supporting documentation for the sale and the calculation of the NET SALE PROCEEDS. Both PORCELAIN METALS' and DTSC's

approval of the Seller's Estimated Settlement Statement shall be required prior to closing.

   o. PORCELAIN METALS will, within thirty (30) DAYS, record a Land Use Covenant provided by DTSC, if: 1) the remedy for the LOT 2 SITE selected in an approved final Remedial Action Plan or Removal Action Plan approved by DTSC requires the recording of a Land Use Covenant; and 2) PORCELAIN METALS still owns the PROPERTY.

57. PORCELAIN METALS' payment obligations under this Consent Decree shall be deemed to have been satisfied in full upon: (1) Delivery to DTSC of the payments due under Paragraphs 51, 52 (if any), 54, and 56.f; (2) Delivery to the Los Angeles County Tax Collector of payments due under Paragraphs 52 (if any is required) and 53; and (3) Delivery to the FTB of the payments due under Paragraph 55. The payments specified in Paragraphs 51, 52, 54, and 56.f shall be made by certified or cashier's check made payable to California Department of Toxic Substances Control, and shall bear on its face both the docket number of this proceeding and the phrase "Site Code 300546-SM."

   a. The payments shall be sent to:

      Accounting Office, MS-21A
      Department of Toxic Substances Control
      P.O. Box 806
      Sacramento, CA 95812-0806

   b. A copy of the check shall be mailed to:

      Robin McGinnis
      Senior Staff Counsel
      Department of Toxic Substances Control
      Office of Legal Counsel, MS-23A
      1001 I Street
      Sacramento, CA 95814

      Or e-mailed to robin.mcginnis@dtsc.ca.gov in .pdf format.

      And to:

John W. Everett
Deputy Attorney General
Department of Toxic Substances Control
600 W. Broadway, Suite 1800
San Diego, CA 92101

Or e-mailed to john.everett@doj.ca.gov in .pdf format.

58. This Consent Decree is conditioned upon full performance of PORCELAIN METALS' obligations in this Consent Decree. If the requirements of this Consent Decree are not met, then this Consent Decree shall be voidable at the discretion of DTSC, and DTSC may proceed to litigate the Complaint against PORCELAIN METALS. If DTSC voids this Consent Decree, then the entire Consent Decree shall be void.

## VII. ACCESS TO INFORMATION AND THE PROPERTY

59. Within thirty (30) DAYS of the EFFECTIVE DATE, PORCELAIN METALS shall provide to DTSC copies of any and all unprivileged records, documents, and information within its possession or control, or that of its agents, relating to: (a) the ownership, operation, or control of LOT 1 and LOT 2; (b) the purchase, storage, use, handling, generation, treatment, transportation, or disposal of hazardous substances in connection with the SITE; (c) disposals, releases, and/or threatened releases of hazardous substances at the SITE, including the soil and groundwater; and (d) removal, remedial, or response actions conducted by any person at the SITE. If PORCELAIN METALS believes it already produced all such documents, it may comply with this Paragraph by sending DTSC a signed letter representing and warranting that it has already produced the information required by this Paragraph. Sending such a letter shall not absolve PORCELAIN METALS of its obligations under this Paragraph.

60. If after the EFFECTIVE DATE, PORCELAIN METALS obtains or discovers any records, documents, or information described in Paragraph 59 not previously provided to DTSC, PORCELAIN METALS agrees to provide DTSC copies of the additional records, documents, or information within ten (10) DAYS

of the date PORCELAIN METALS discovers or obtains the records, documents, or information.

61. For as long as PORCELAIN METALS owns the PROPERTY, PORCELAIN METALS shall allow DTSC access to the PROPERTY to perform response actions.

## VIII. COVENANT NOT TO SUE BY PLAINTIFF

62. Except as expressly provided in Section IX (PLAINTIFF's Reservation of Rights) of this Consent Decree, PLAINTIFF covenants not to sue PORCELAIN METALS and its representatives, affiliates, successors, heirs, legatees, and assigns and FEDERAL INSURANCE COMPANY (individually a "Released Party" and collectively the "Released Parties") for civil liability for reimbursement of all or any portion of past or future RESPONSE COSTS, declaratory relief, injunctive relief, or any other judicial or administrative action or relief pursuant to sections 107 of CERCLA, 42 U.S.C. sections 9607, the Resource Conservation and Recovery Act of 1976, 42 U.S.C. section 6901 *et seq.*, the Carpenter-Presley-Tanner Hazardous Substances Account Act, California Health and Safety Code section 25300 et seq., the California Hazardous Waste Control Law, California Health and Safety Code section 25100 et seq, or nuisance or trespass, with regard to releases or threatened releases of hazardous substances related to the SITE, whether known or unknown. This Covenant Not to Sue is conditioned upon the complete and satisfactory performance by PORCELAIN METALS of all its obligations under this Consent Decree. This Covenant Not to Sue may be revoked and deemed not effective if PORCELAIN METALS fails to fully perform on its obligations stated in this Consent Decree.

63. For any person, entity, or Released Party not bound by the signatories to this Consent Decree, PLAINTIFF's covenant not to sue is not valid to those persons or entities absent their express written acknowledgement that they waive their right to sue PLAINTIFF in accordance with the terms of Paragraph 67.

## IX.  PLAINTIFF'S RESERVATION OF RIGHTS

64. Reservation of Claims.  PLAINTIFF reserves, and this Consent Decree is without prejudice to, all rights against PORCELAIN METALS and its representatives, affiliates, successors, heirs, legatees, and assigns, or any rights PLAINTIFF may have against FEDERAL INSURANCE COMPANY with respect to the following matters:

    a.  failure of PORCELAIN METALS to meet the requirements of this Consent Decree;

    b.  damage to natural resources, as defined in CERCLA section 101(6), 42 U.S.C. § 9601(6), including all costs incurred by any natural resources trustees;

    c.  liability resulting from introduction of any hazardous substance, pollutant, or contaminant to the SITE by PORCELAIN METALS after the EFFECTIVE DATE;

    d.  liability resulting from overt acts of PORCELAIN METALS after the EFFECTIVE DATE that cause the exacerbation of the hazardous substance conditions existing at or from the SITE;

    e.  claims based on liability arising from the past, present, or future releases or disposal of hazardous substances at sites or locations other than the SITE and;

    f.  Claims based on criminal liability.

65. Government Authority.  Except as expressly provided in this Consent Decree, nothing in this Consent Decree is intended, nor shall it be construed to, preclude DTSC from exercising its authority under any law, statute, or regulation. Furthermore, nothing in this Consent Decree is intended, nor shall it be construed to, preclude any other state agency, department, board, or entity, or any federal entity from exercising its authority under any law, statute, or regulation.

66. <u>Claims Against Other Persons</u>.  DTSC reserves, and this Consent is without prejudice to, all rights, claims, and causes of action DTSC may have against any person or entity other than the Released Parties.  Other than as set forth in this Consent Decree, nothing in this Consent Decree is intended to be nor shall it be construed as a release, covenant not to sue, or compromise of any claim or cause of action which DTSC may have against any person other than the Released Parties.

## X.  COVENANT NOT TO SUE BY PORCELAIN METALS

67. PORCELAIN METALS covenants not to sue, and agrees not to assert any claims or causes of action against PLAINTIFF or any DTSC contractors or employees that arise from any action or inaction by them related to the SITE, including, but not limited to, any claims or causes of action for injuries, losses, costs, damages, declaratory relief, or injunctive relief that:

    a.  arise out of the transaction or occurrence that is the subject matter of PLAINTIFF's Complaint;

    b.  relate to hazardous substances, wastes, or other materials released, disposed of, generated, or transported to or from the Site; or

    c.  are caused or incurred as a result of the performance of the requirements of this Consent Decree or DTSC's response actions at the SITE.

68. In any legal proceedings that PLAINTIFF may initiate against PORCELAIN METALS for non-compliance with this Consent Decree, in such proceedings, PORCELAIN METALS may raise any and all defenses that PORCELAIN METALS deems to be relevant to the issue of whether or not it has complied with the terms of the Consent Decree.

## XI.    EFFECT OF SETTLEMENT AND CONTRIBUTION PROTECTION

69.    With regard to claims for contribution against PORCELAIN METALS for "Matters Addressed" in this Consent Decree, the PARTIES agree, and the Court finds as follows:

    a.    This Consent Decree constitutes a judicially approved settlement within the meaning of CERCLA section 113(f)(2), 42 U.S.C. § 9613(f)(2).

    b.    This Consent Decree requires that PORCELAIN METALS pay certain costs with respect to its liability at the SITE.

    c.    PORCELAIN METALS is entitled to the contribution protection provided by CERCLA section 113(f)(2), 42 U.S.C. § 9613(f)(2), and by state statutory and common law for the "Matters Addressed" in this Consent Decree, except for actions and claims identified in Section VIII (PLAINTIFF's Reservation of Rights).

70. "Matters Addressed." The "Matters Addressed" in this Consent Decree include all response actions taken or to be taken and all RESPONSE COSTS incurred or to be incurred, at or in connection with the SITE by PLAINTIFF or any other person.

71. The protection provided for in this Section XI is conditioned upon full compliance by PORCELAIN METALS with its obligations in this Consent Decree.

72. Nothing in this Consent Decree limits or impairs the right of PLAINTIFF to pursue any other person for unrecovered RESPONSE COSTS incurred by PLAINTIFF.

## XII.    NOTIFICATION

73. Notification to or communication between the PARTIES as required or provided for in this Consent Decree shall be addressed as follows:

1  For PLAINTIFF:

2      Robin McGinnis
       Senior Staff Counsel
3      Department of Toxic Substances Control
       Office of Legal Counsel, MS-23A
4      1001 I Street
       Sacramento, CA 95814
5
       John W. Everett
6      Deputy Attorney General
       California Dept. of Justice
7      600 West Broadway, Suite 1800
       San Diego, CA 92101
8

9  For PORCELAIN METALS:

10     Carolyn M. McBride

11     Porcelain Metals Corporation
       20 River Hill Road
12     Louisville, KY 40207

13     With copy to:

14     Thomas F. Vandenburg
       Wood, Smith, Henning & Berman LLP
15     10960 Wilshire Boulevard, 18th Floor
       Los Angeles, CA 90024

16

17  **XIII. GENERAL PROVISIONS**

18      74. <u>Parties Bound.</u>  This Consent Decree shall apply to, be binding upon, and

19  inure to the benefit of the PARTIES and their respective representatives,

20  successors, heirs, legatees, and assigns.

21      75. <u>No Rights in Other Parties.</u>  Except as provided in Paragraph 74, nothing

22  in this Consent Decree shall be construed to create any rights in, or grant any cause

23  of action to, any person not a party to this Consent Decree.

24      76. <u>No Waiver of Enforcement.</u>  The failure of DTSC to enforce any

25  provision of this Consent Decree shall in no way be deemed a waiver of such

26  provision or in any way affect the validity of this Consent Decree.  The failure of

27  DTSC to enforce any such provision shall not preclude it from later enforcing the

28  same or any other provision of this Consent Decree.

77. <u>Attorneys' Fees and Costs.</u>  Except as expressly provided in this Consent Decree, the PARTIES will bear their own attorneys' fees and costs and will not seek to recover attorneys' fees and/or litigation costs against each other.

78. <u>Final Agreement.</u>  This Consent Decree constitutes the final, complete, and exclusive agreement and understanding between the PARTIES with respect to the settlement embodied in this Consent Decree.

79. <u>Modifications.</u>  This Consent Decree may be modified only upon written approval of the PARTIES and with the consent of the Court.

80. <u>Counterparts.</u>  This Consent Decree may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

81. <u>Agent.</u>  PORCELAIN METALS has appointed and authorized the agents identified in Paragraph 73  to receive notices with respect to all matters arising under or relating to this Consent Decree.

## XIV.  ENTRY OF THE CONSENT DECREE

82. This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) DAYS for public notice and comment.  DTSC shall file with the Court any written comments received and DTSC's responses thereto.  DTSC reserves the right to withdraw or withhold its consent to entry of the Consent Decree if comments regarding the Consent Decree disclose facts or considerations that indicate that this Consent Decree is inappropriate, improper, or inadequate.  DTSC may modify or withdraw its consent to this Consent Decree if comments received during the public comment period disclose facts or considerations that indicate that this Consent Decree is inappropriate, improper, or inadequate.  PORCELAIN METALS consents to the entry of this Consent Decree without further notice.

83. If, for any reason, the Court declines to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any PARTY

and the terms of the Consent Decree may not be used as evidence in any litigation between the PARTIES.

84. Each signatory to this Consent Decree certifies that he or she is fully authorized by the PARTY he or she represents to enter into the terms and conditions of this Consent Decree, to execute it on behalf of the PARTY represented, and to legally bind that PARTY to all the terms and conditions of this Consent Decree.

## XV. APPROVAL OF PARTIES

DTSC and PORCELAIN METALS consent to this Consent Decree by and through their duly authorized representatives as follows:

FOR THE CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL:

DATE: _____     By: _____
                                        SIGNATURE

                                        _____
                                        NAME (printed or typed)

                                        _____
                                        TITLE (printed or typed)

FOR PORCELAIN METALS CORPORATION:

DATE: _____     By: _____
                                        SIGNATURE

                                        _____
                                        NAME (printed or typed)

                                        _____
                                        TITLE (printed or typed)

APPROVED AS TO FORM AND CONTENT:

Dated: _____

                                        John Everett
                                        Deputy Attorney General
                                        Attorney for Plaintiff

Dated: _____

                                        Thomas Vandenburg
                                        Attorney for Defendant

**IT IS SO ORDERED, ADJUDGED, AND DECREED.**

Dated: _February 5, 2019_        _____

                                        Honorable George H. Wu
                                        United States District Judge

# EXHIBIT A



# 20161476375





**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**11/23/16 AT 11:27AM**

Pages:
0007

| | |
|---|---|
| FEES: | 0.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 0.00 |



**L E A D S H E E T**



201611230730018

**00013011598**



007967923

**SEQ:**
**01**

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**

E516354

RECORDING REQUESTED BY:

Department of Toxic Substances Control

AND WHEN RECORDED, MAIL DOCUMENT TO:

**Sayareh Amirebrahimi,**
Branch Chief
Brownfields and Environmental Restoration Program
Department of Toxic Substances Control
**9211 Oakdale Ave**
**Chatsworth, CA 91311**



11/23/2016

*20161476375*

SPACE ABOVE THIS LINE RESERED FOR RECORDER'S USE

## STATUTORY LIEN

The State of California, Department of Toxic Substances Control (DTSC) hereby records this Statutory Lien in the amount of $2,925,211.32 on the real property in the County of Los Angeles, State of California located at 6904 East Slauson Avenue in Commerce, Los Angeles County, State of California, and identified as Assessor's Parcel Number (APN) 6356-017-028 by the Los Angeles County Office of the Assessor. The property is known as the CAMEO site, Site Code 300546 (the "Site"). The owner of record as shown on the latest equalized assessment roll for APN 6356-017-028 is the Kenfield Corporation. However, Porcelain Metals Corporation, a Kentucky corporation, has demonstrated that it is the current property owner as the result of the merger of Kenfield Corporation into California Metal Enameling Company (CAMEO), and the merger of CAMEO into Porcelain Metals Corporation.

A legal description of the property described in the Grant Deed, dated November 24, 1952, found in the official records in the Los Angeles County Registrar-Recorder/County Clerk is as follows:

The real property, in the county of Los Angeles, state of California, described as:

The southeasterly 228 feet of the northwesterly 558.91 feet of lot 43 of East Laguna, in the County of Los Angeles, State of California, as shown on map marked Exhibit A, and attached to decree of partition in Action B-81961, Superior Court of said County, a certified copy of which decree is recorded in book 122, page 162 et seq., of Official Records, in the office of the County Recorder of said County.

EXCEPT the northwesterly 70 feet of the southwesterly 50 feet thereof.

A legal description of the property described in the Quitclaim Deed, dated November 24, 1952, found in the official records in the Los Angeles County Registrar-Recorder/County Clerk is as follows:

The real property in the County of Los Angeles, State of California, described as:

The northwesterly 70 feet of the southwesterly 50 feet of the southeasterly 228 feet of the northwesterly 558.91 feet of lot 43 of East Laguna, in the County of Los Angeles, State of California, as shown on map marked Exhibit A, and attached to decree of partition in Action B-81961, Superior Court, of said county, a certified copy of which decree is recorded in book 122, page 162 et seq., of Official Records, in the office of the County Recorder of said County.

DTSC incurred necessary response costs pursuant to the Hazardous Substances Account Act, Health and Safety Code division 20, chapter 6.8, section 25360 et seq. (HSAA), in conducting or overseeing response action(s) due to a release and/or threatened release of hazardous substances at the Site. The property described herein was subject to, or affected by, the response actions conducted by DTSC. The amount secured by this lien is equal to the costs or damages incurred by DTSC pursuant to the HSAA from April 1, 2006 through March 31, 2016 with respect to the property described herein and which remain unreimbursed. DTSC's investigation and/or remediation of the Site continues and DTSC will incur additional response costs related to the Site. DTSC may record another lien for any future response costs that remain unreimbursed.

This lien is recorded pursuant to, and its enforceability is governed by, Health and Safety Code section 25365.6. Health & Safety Code section 25365.6, subdivision (a), provides that this lien arises "at the time costs are first incurred by the Department … with respect to the response action at the site." Health & Safety Code section 25365.6, subdivision (d), provides that DTSC's statutory lien "shall have the force and effect of, and the priority of, a judgment lien." Pursuant to Health & Safety Code section 25365.6, subdivision (c), the lien continues until the liability for these costs or a damage, or a judgment against the responsible party, is satisfied.

Date: 11/10/2016

Sayareh Amirebrahimi
Branch Chief
Chatsworth Office
Brownfields and Environmental Restoration Program
Department of Toxic Substances Control
9211 Oakdale Avenue
Chatsworth, CA 91311

# VERIFICATION OF STATUTORY LIEN

I, Sayareh Amirebrahimi, the undersigned, am employed as a Branch Chief by the State of California, Department of Toxic Substances Control (DTSC), the entity recording the foregoing Statutory Lien. I have been duly authorized by DTSC to execute this verification, have read the foregoing Statutory Lien, know the contents thereof, and that the same is true. The Statutory Lien contains, among other things, a correct statement of the interest held in the real property described therein by DTSC.

I declare under penalty of perjury that the foregoing is true and correct, and that this verification was executed in Los Angeles, California on November 10, 2016.

Sayareh Amirebrahimi, Branch Chief
Chatsworth Office
Brownfields and Environmental Restoration Program
Department of Toxic Substances Control
9211 Oakdale Ave
Chatsworth, CA 91311

# NOTARY ACKNOWLEDGMENT OF STATUTORY LIEN

A notary public or other officer completing
this certificate verifies only that the identity
of the individual who signed the document
to which this certificate is attached, and
not the truthfulness, accuracy, or validity of
that document

State of California
County of _Los Angeles_ )

On _November 10, 2016_ before me, _M. Bose, Notary Public_,
personally appeared _Sayareh Amirebrahimi_ who proved to me on
the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _M. Bose_ _____ (Seal)



M. BOSE
Commission No. 2041082
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires SEPTEMBER 12, 2017
NCC1        NCC1




# Department of Toxic Substances Control



**Matthew Rodriquez**
Secretary for
Environmental Protection

Barbara A. Lee, Director
9211 Oakdale Avenue
Chatsworth, California 91311

**Edmund G. Brown Jr.**
Governor

November 10, 2016

Los Angeles County Registrar-
Recorder/County Clerk
14340 Sylvan St.
Van Nuys, CA 91401

HEALTH & SAFETY CODE SECTION 25365.6 LIEN ON 6904 EAST SLAUSON
AVENUE COMMERCE, CA 90040, COUNTY OF LOS ANGELES, ASSESSOR'S
PARCEL NUMBER (APN) 6356-017-028.

Dear County Recorder:

Pursuant to Health and Safety Code section 25365.6, the Department of Toxic
Substances Control (DTSC) requests that the enclosed Statutory Lien in the amount of
$2,925,211.32 be recorded on the real property located at 6904 East Slauson Avenue in
the city of Commerce, County of Los Angeles, California, Assessor's Parcel Number
(APN) 6356-017-028. The property is currently owned by Porcelain Metals Corporation,
the successor to Kenfield Corporation. DTSC understands that recording fees are
waived for DTSC, a State agency, pursuant to Government Code section 27383.

If you have any questions, please contact me at (818) 717-6585 or
Armen.Minassian@dstc.ca.gov.

Sincerely,

Armen G. Minassian

Armen Minassian
Project Manager
Chatsworth Office
Brownfields and Environmental Restoration Program

Enclosures

1. Statutory Lien
2. Verification of Statutory Lien
3. Notary Acknowledgment of Statutory Lien

cc:

D. Kevin Shipp
Senior Staff Counsel
Office of Legal Counsel
Department of Toxic Substances Control
1001 I Street
Sacramento, CA 95814